1  Nazareth M. Haysbert.  State Bar No. 294431
   *nazareth@hmlaw.la*
2  James L. Moultrie, III. State Bar No. 296805
**HAYSBERT | MOULTRIE, LLP**
3  4640 Admiralty Way, Suite 500
Marina Del Rey, California 90292
4  Telephone:   (310) 496–5796
Facsimile:    (310) 760-4083
5
*Attorneys for Plaintiff*
6

7

8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10

11

12  TYNESHA DIXON, an individual,

13        Plaintiff,

14

15        v.

16  THE CITY OF LOS ANGELES, a
public entity; OFFICER NAVARRETE,
17  an individual; JANETTE ROMAN, an
individual; OFFICER GUERRERO, an
18  individual; OFFICER MAGAN, an
individual; OFFICER NELSON, an
19  individual; OFFICER SHONAFELT, an
individual; OFFICER GABALDON, an
20  individual; OFFICER GARCIA, an
individual; DETECTIVE GIBSON, an
21  individual; LIEUTENANT PERRY, an
individual; MICHAEL MITCHELL, an
22  individual; and DOES 1-50,
23

24        Defendants.

CASE NO.

**COMPLAINT FOR DAMAGES**

**CIVIL RIGHTS VIOLATIONS
PURSUANT TO 42 U.S.C. § 1983**
   1. FALSE IMPRISONMENT
   2. UNLAWFUL SEARCH AND
     SEIZURE
   3. DELIBERATE FABRICATION
     OF EVIDENCE
   4. MALICIOUS PROSECUTION
   5. MONELL LIABILITY
**STATE LAW CLAIMS**
   6. FALSE ARREST
   7. IIED
   8. NEGLIGENCE
   9. MALICIOUS PROSECUTION
  10. ASSAULT
  11. BATTERY

1        TYNESHA DIXON, an individual ("Ms. Dixon" or "Plaintiff") hereby alleges

2   the following against Defendants CITY OF LOS ANGELES, a public entity (the

3   "City"); OFFICER NAVARRETE, an individual; JANETTE ROMAN, an individual;

4   OFFICER GUERRERO, an individual; OFFICER MAGAN, an individual; OFFICER

5   NELSON, an individual; OFFICER SHONAFELT, an individual; OFFICER

6   GABALDON, an individual; OFFICER GARCIA, an individual; DETECTIVE

7   GIBSON, an individual; LIEUTENANT PERRY, an individual; MICHAEL

8   MITCHELL, an individual; and DOES 1-50, (collectively "Defendants"), upon

9   information and belief except for information identified as being based on personal

10  knowledge, which allegations are likely to have evidentiary support after a reasonable

11  opportunity for further discovery.

12  **I.**

13  **<u>INTRODUCTION</u>**

14       On June 3, 2019, Los Angeles Police Department ("LAPD") officers illegally

15  arrested and handcuffed Ms. Tynesha Dixon ("Ms. Dixon" or "Plaintiff") without

16  proper investigation or credible probable cause.  Ms. Dixon was detained simply for

17  matching the suspects' description of "Black female" and was arrested based only on

18  the spontaneous identification of the victim's father, who gave no prior indication that

19  he witnessed any of the suspects and possessed potential racial biases.

20       Defendants' failure to conduct a proper investigation or inspection into the

21  circumstances before handcuffing and arresting Ms. Dixon and jailing her for 89 days

22  has given rise to the damages sustained by Ms. Dixon.  This claim involves the wrongful

23  and tortious actions or inaction of the LAPD and its employees for Ms. Dixon's injuries

24  occurring on June 3, 2019.  This action seeks compensation for the pain and suffering

25  Ms. Dixon has endured as a direct and proximate cause of Defendants' negligence and

26  failure to adequately investigate who they were arresting.

27  ///

28  ///

## II.

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 42 U.S.C. §§ 1983 et seq., and the Fourth and Fourteenth Amendments of the United States Constitution. Subject matter jurisdiction is premised on 29 U.S.C. §§ 1331 and 1343(a)(1), (2), (3), and (4), and the aforementioned statutory and constitutional provisions. The Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events, injuries, and violations of rights alleged herein occurred within the County of Los Angeles, California, which is within this district, and because some, if not all of the Defendants, reside within the County of Los Angeles, and the jurisdictional boundaries of this Court.

## III.

## PARTIES

3.     Plaintiff Tynesha Dixon (hereinafter "Ms. Dixon" or "Plaintiff") is, and was at all times herein, a citizen of the United States, residing in the County of Los Angeles, State of California.

4.     Defendant City of Los Angeles (hereinafter "City") is, and at all times material herein was, a municipal corporation duly incorporated under the laws of the State of California.  It is responsible for the actions, policies, practice and customs of the Los Angeles Police Department (hereinafter "LAPD"), as well as the hiring, screening, training, supervising, controlling and disciplining of LAPD deputies, as well as other employees and agents.  City controls and supervises the LAPD, and acts jointly with it in executing its functions and meeting its legal obligations.  Defendant City is sued in its own right and/or on the basis of respondeat superior.

5.     The LAPD is a public entity which shares a collective identity with the City and is responsible for the acts and omissions of its employees who violate the rights of those in their custody.

6.     Defendant Officer Navarrete, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Navarrete.

7.     Defendant Janette Roman, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Janette Roman served as an officer with the LAPD at all times material herein.

8.     Defendant Officer Guerrero, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Guerrero.

9.     Defendant Officer Magan, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Magan.

10.     Defendant Officer Nelson, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Nelson.

11.     Defendant Officer Shonafelt, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Shonafelt.

12.     Defendant Officer Gabaldon, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Gabaldon.

13.     Defendant Detective Gibson, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Detective Gibson.

14.     Defendant Lieutenant Perry, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Lieutenant Perry.

15.     Defendant Officer Garcia, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Plaintiff is ignorant as to the true first name of Officer Garcia.

16.     Defendant Michael Mitchell, upon information and belief, at all times material herein was a citizen of the United States residing in the County of Los Angeles, State of California.  Defendant Michael Mitchell served as an employee of the LAPD at all times material herein, and submitted the investigative report leading to charges against Plaintiff.

17.     Plaintiff is ignorant of the true names and capacities of Defendants sued as Does 1 through 50, inclusive, and therefore sues said Defendants by fictitious names.  Does 1 through 40 consist of the employees of, or individuals otherwise associated with Defendant City.  Does 41 through 50 consist of other public and or government agencies working in connection with Defendant City and sharing joint responsibility, or are otherwise liable in their own right.  Plaintiff will ask leave of this Court to amend this complaint to allege their true names and capacities when the same is ascertained.  Plaintiff alleges that each of the Defendants named as Does was in some manner responsible for the acts and omissions alleged herein, and Plaintiff will ask leave of this Court to amend the complaint to allege such responsibilities when the same is ascertained.

18.     On information and belief, each of the Defendants named as Does are, and at all times material, have been residents of or are incorporated in the County of Los Angeles.

19.     All acts and failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and control of the others.  Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant ratified the acts and omissions of other Defendants.  Whenever and wherever reference is made in this complaint to any act by a Defendant

1   or Defendants, such allegations and reference shall also be deemed to mean the acts and

2   failures to act of each Defendant acting individually, jointly, or severally.

3       20.     On December 3, 2019, pursuant to Government Code Section 910 et seq.,

4   Plaintiff presented a claim with the City in full compliance with the California Tort

5   Claims Act.  This claim is timely filed following the City's rejection of Plaintiff's claim.

**IV.**

**GENERAL FACTUAL ALLEGATIONS**

8       21.     Plaintiff restates, realleges and incorporates by reference paragraphs 1

9   through 20, inclusive, as though fully set forth herein.

10      22.     On June 3, 2019, at approximately 8:30 a.m., a father drove his gold Toyota

11  Camry ("Camry") into a McDonald's parking lot, and parked in front of the entrance

12  next to a white Range Rover SUV ("SUV").

13      23.     The father exited the vehicle and left his car unlocked and running to order

14  inside the restaurant while his 11-year old child (collectively "victims") remained in the

15  backseat watching a video on his phone.

16      24.     While the father was inside the restaurant, two Black women exited the

17  passenger doors of the SUV and entered the Camry.

18      25.     The child escaped through the rear door and the women drove off in the

19  Camry, followed by the SUV with an unknown driver.

20      26.     The victims called the Los Angeles Police Department ("LAPD") to report

21  the theft, providing the dispatcher only with the description of two Black girls as the

22  suspects.

23      27.     The dispatcher asked the victims to describe what the suspects were

24  wearing, and the child remembered only a blue scarf.  The father never provided any

25  description of the suspects on his own aside from an outburst of "Stupid ass Black

26  motherfuckers."

27  ///

28

28.     At approximately 11:30 a.m., Ms. Dixon called the LAPD to report an unknown gold Toyota Camry that was parked in her backyard, stating that she asked her neighbors about it and didn't know who it belonged to.

29.     When LAPD officers came to investigate, Ms. Dixon and her neighbor, Salea Irvin, approached them and informed the officers that they believed the Camry was stolen because it did not belong to anyone who lived there and was missing the front license plate.

30.     The gold Toyota Camry parked behind the apartments was in fact the stolen Camry from earlier that morning.

31.     Recognizing that Ms. Dixon and Ms. Irvin were Black and female, the LAPD officers who responded to Ms. Dixon's call, upon information and belief, arrested and handcuffed Ms. Dixon and Ms. Irvin for carjacking and grand theft auto.

32.     Ms. Dixon and Ms. Irvin were held behind their apartments in handcuffs until the victims were brought to the scene for identification.

33.     No other persons were handcuffed or placed into a lineup with Ms. Dixon or Ms. Irvin for the identification.

34.     The victims remained inside the back of a police cruiser for the entirety of the identification process, approximately 25 to 30 feet away from the Plaintiff.

35.     Despite being brought to the location that the Camry was found by uniformed LAPD officers, having only Ms. Dixon and Ms. Irvin walked around the police cruiser in handcuffs, and being instructed to identify the two women that stole the Camry, the child stated Ms. Dixon was not one of the suspects.

36.     Defendant Janette Roman testified that the victims were not separated during the field show up because they believed that the child was the only witness to the crime.

37.     However, after the child did not identify Ms. Dixon, the father spontaneously identified Ms. Dixon as the driver of the vehicle, stating for the first time that he had glanced into the SUV and seen her in the driver's seat.

38.     In fact, the father identified both Ms. Dixon and Ms. Irvin before the child witness, stating "I know they were there.  I saw them.  I know it.  I am pretty sure it's them."

39.     Despite no mention ever being made of large gold earrings on one of the unidentified Black women who entered the car by the victims and after being unable to identify a suspect for quite some time, an LAPD officer told the child to focus on Ms. Irvin's earrings and instructed the child to try again to identify her.

40.     After the LAPD officer told the child to focus on Ms. Irvin's earrings and try again, the child finally, though not convincingly, identified Ms. Irvin as one of the suspects.

41.     The LAPD wrapped up their investigation the instant the identification was made by the child.

42.     In all, Ms. Dixon was handcuffed for approximately 3 hours and was held in jail for approximately 89 days.

43.     No efforts were made by the LAPD to obtain fingerprints or other DNA evidence from the car or the license plate which was recovered at the scene.

44.     In fact, Ms. Dixon was not questioned or interrogated at all prior to being taken to the police station and booked.

45.     In the police report ("PR") completed by Defendant Janette Roman the morning after Plaintiff's arrest, she indicated that the father had looked at the driver as he was going in to the McDonalds restaurant during her initial investigation and prior to Plaintiff's detainment, yet Defendant Roman testified that she did not believe the father was a witness when he was brought to the field show up and not separated from the child.

46.     The PR mentions that there was a radio call of a vehicle parked next to an apartment complex, but does not mention that Plaintiff was the individual that made the call and that she had told the dispatcher she believed the car was stolen because it didn't belong to anyone there and was missing the front license plate.  Instead, the PR claims

1  that Plaintiff and Ms. Irvin spontaneously exited their residence and approached the
2  officers stating that the car was stolen.

3      47.   In fact, Plaintiff received a call from the dispatcher in response to her
4  reporting the stolen vehicle and the dispatcher requested that she meet with the LAPD
5  officers outside, which is why she approached the officers.  This information was known
6  to the officers at the time, as they were recorded making comments that Ms. Dixon must
7  have called it in on herself, yet this fact was not included in the PR.

8      48.   In the investigative report ("IR") used to pursue charges against Plaintiff,
9  Defendant Michael Mitchell omitted that Plaintiff had placed the initial call to report the
10  stolen vehicle, only stating that they had received a LoJack Stolen Vehicle Recovery
11  System ("Lo Jack") hit and that Ms. Irvin and Ms. Dixon "inquir[ed] about the stolen
12  Toyota Camry" and were thus detained.  The IR also omitted that the father was not even
13  considered a witness until he identified Plaintiff as the driver of the SUV, and that he
14  had not given any description of any suspect until the field show up.

15      49.   Defendant Michael Mitchell indicated that he had used the PR to inform his
16  investigation.

17      50.   At a preliminary hearing, the father testified that he had seen the driver of
18  the SUV when he was getting out of his car and noted to himself that the driver was
19  wearing a red shirt and a black doo rag, exactly what Ms. Dixon was wearing during the
20  field show up, yet none of this information was mentioned to any officer or to the 911
21  dispatcher prior to the show up.

22      51.   Indeed, there was clear exculpatory forensic evidence demonstrating that
23  Ms. Dixon was not at the location of the car theft—information Ms. Irvin was forced to
24  pay for and obtain herself because the LAPD made no effort to investigate.

25      52.   Moreover, despite claims by the father that the white SUV was being driven
26  by Ms. Dixon, that vehicle was never found or traced to either Ms. Dixon or Ms. Irvin.

27      53.   All charges were summarily dropped against Ms. Dixon and Ms. Irvin on
28  October 23, 2019.

# V.

## FIRST CAUSE OF ACTION

### FALSE ARREST—PURSUANT TO 42 U.S.C. § 1983

**(*Plaintiff as Against Defendant Officers Navarrete, Roman, Guerrero, Magan, Nelson, Shonafelt, Gabaldon, Garcia; Detective Gibson; Lieutenant Perry; Michael Mitchell; And Does 1-40*)**

54.    Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

55.    Plaintiff has a right to be free from arrest absent a warrant or probable cause.

56.    Defendants, and each of them, arrested Plaintiff, or alternatively intentionally caused her to be arrested.

57.    Defendants, and each of them, did not have the necessary probable cause to arrest Plaintiff as all they knew was that Plaintiff and her neighbor, Ms. Irvin, matched the suspects' description of "Black female."

58.    Further, the father's identification of Plaintiff as a suspect in light of the foregoing facts and circumstances clearly did not rise to the level of probable cause.

59.    The conduct of the Defendants, and each of them, was a substantial factor in causing the harm that Plaintiff experienced as a direct result of the false arrest.

60.    The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, in an amount to be proven at trial.

61.    In addition, Plaintiff Dixon is entitled to reasonable attorney's fees and costs of litigation upon prevailing.

///

///

///

# VI.

## SECOND CAUSE OF ACTION

### UNLAWFUL SEARCH AND SEIZURE—PURSUANT TO 42 U.S.C. § 1983

*(Plaintiff as Against Defendant Officers Navarrete, Roman, Guerrero, Magan, Nelson, Shonafelt, Gabaldon, Garcia; Detective Gibson; Lieutenant Perry; Michael Mitchell; And Does 1-40)*

62.　Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

63.　This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

64.　At all times relevant hereto, Plaintiff Dixon possessed the clearly established right, guaranteed by the Fourth Amendment of the United States Constitution, to be free from unreasonable searches and seizures by police officers acting under the color of law.

65.　Defendants, and each of them, violated Plaintiff's Fourth Amendment rights by arresting her without a warrant or probable cause, and by causing several items of her personal property to be seized incident to the unlawful arrest.

66.　Defendants subjected Plaintiff Dixon to the aforementioned deprivations with either malice, deliberate indifference, or reckless disregard for the Plaintiff's rights under the United States Constitution.

67.　The conduct of the Defendants, and each of them, was a substantial factor in causing the harm that Plaintiff experienced as a direct result of the unlawful search and seizure.

68.　The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, in an amount to be proven at trial.

///

69.     In addition, Plaintiff Dixon is entitled to reasonable attorney's fees and costs of litigation upon prevailing.

**VII.**

**THIRD CAUSE OF ACTION**

**DELIBERATE FABRICATION OF EVIDENCE – 42 U.S.C. § 1983**

*(Plaintiff as against Defendants Officer Navarrete, Janette Roman, Michael Mitchell, and Does 1-40)*

70.     Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

71.     This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

72.     At all times relevant hereto, Plaintiff Dixon possessed the clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.

73.     Defendants, and each of them, violated Plaintiff's Fourth and Fourteenth Amendment rights by arresting her without a warrant or probable cause, and deliberately fabricating evidence used to charge and prosecute Plaintiff.

74.     Upon information and belief, the aforementioned Defendants deliberately fabricated evidence that the father had told them he had seen Plaintiff in the driver's seat of the SUV before the field show up took place.

75.     Said Defendants investigated Plaintiff as a suspect to the crime despite deliberate indifference to the facts that Plaintiff reported the stolen car to the police, that she was not at the scene of the crime, and that the identification used to charge and prosecute her was unreliable and the result of clear bias.

76.     Said Defendants allowed the field show up to take place under conditions that were so coercive and abusive to Plaintiff's rights such that said Defendants were at the least deliberately indifferent to the fact that placing the father and son together in a car, having only Ms. Irvin and Ms. Dixon in front of them in handcuffs to identify, and

1   being in view of their stolen vehicle would lead to obtaining false information,

2   including the identifications by the father and child.

3        77.    The aforementioned fabrications and deliberate indifference led to

4   criminal charges being filed against Plaintiff and a subsequent prosecution.  However,

5   all charges were dropped at a preliminary hearing.

6        78.    Upon information and belief, this misinformation was provided to the

7   prosecutors, and but for the foregoing, Plaintiff would not have been charged or

8   prosecuted.

9        79.    Defendants subjected Plaintiff Dixon to the aforementioned deprivations

10  with either malice, deliberate indifference, or reckless disregard for the Plaintiff's

11  rights under the United States Constitution.

12       80.    The conduct of the Defendants, and each of them, was a substantial factor

13  in causing the harm that Plaintiff experienced as a direct result of the deliberate

14  fabrication of evidence.

15       81.    The actions of said individual defendants were committed maliciously,

16  oppressively, and constituted despicable conduct, sufficient for an award of punitive /

17  exemplary damages against said Defendants and each of them, in an amount to be

18  proven at trial.

19       82.    In addition, Plaintiff Dixon is entitled to reasonable attorney's fees and

20  costs of litigation upon prevailing.

## VIII.

## FOURTH CAUSE OF ACTION

## MALICIOUS PROSECUTION – 42 U.S.C. § 1983

***(Plaintiff as against Officers Navarrete, Roman, Guerrero, Magan, Nelson,
Shonafelt, Gabaldon, Garcia; Detective Gibson; Lieutenant Perry; Michael
Mitchell; And Does 1-40)***

27       83.    Plaintiff incorporates by reference and realleges each and every allegation

28  of the preceding paragraphs as if fully stated here.

84.     This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

85.     At all times relevant hereto, Plaintiff Dixon possessed the clearly established constitutional due process right not to be prosecuted with malice and without probable cause for the purpose of denying specific constitutional rights.

86.     Said Defendants wrongfully caused charges to be filed against Plaintiff despite having no probable cause to arrest her by presenting false and or misleading information to the prosecutor, and by failing to conduct an adequate investigation.

87.     Defendants, and each of them, had possession of Ms. Irvin's phone and the ability to use it to track her location at the date and time that the Camry was stolen, and should have known based on that information that Plaintiff could not have been involved.

88.     The case against Plaintiff was dismissed almost immediately upon the results of this investigation that Defendants should have performed themselves and prior to instituting charges against Plaintiff.

89.     Plaintiff was subjected to humiliation, fear, and pain and suffering by the illegal acts of the Defendants and suffered injuries as a result of their actions.

90.     Defendants subjected Plaintiff Dixon to the aforementioned deprivations with either malice, deliberate indifference, or reckless disregard for the Plaintiff's rights under the United States Constitution.

91.     The conduct of the Defendants, and each of them, was a substantial factor in causing the harm that Plaintiff experienced as a direct result of the prosecution.

92.     The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, in an amount to be proven at trial.

93.     In addition, Plaintiff Dixon is entitled to reasonable attorney's fees and costs of litigation upon prevailing.

# IX.

## FIFTH CAUSE OF ACTION

## MONELL LIABILITY— PURSUANT TO 42 U.S.C. § 1983

### (*Plaintiff as Against Defendant City Of Los Angeles*)

94.     Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

95.     This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

96.     Defendant City of Los Angeles, acting through the LAPD, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability.  *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  Defendants, and each of them, acted under color of state law when they committed the acts alleged herein, in violation of Plaintiff's rights.

97.     Defendant City of Los Angeles had a duty to Plaintiff to establish, implement, and following policies, procedures, customs and/or practices which confirm and provide the protections guaranteed to Plaintiff under the United States Constitution, including those under the Fourth and Fourteenth Amendments, to include without limitation, the protection of the right to procedural due process and freedom from false arrest and unlawful search and seizure.

98.     Defendant City of Los Angeles also had a duty to use reasonable care to select, assign, supervise, train, control, and review activities of all of their agents, officers, employees and those acting under them, including within Los Angeles Police Department, so as to protect these constitutional rights and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

99.     Based on the duties charged to Defendant City of Los Angeles, they knew or should have known of the obvious needs to establish customs, policies, and practices required to protect the aforementioned civil rights.

100.   Defendant City of Los Angeles had no policy or procedure on conducting field show ups with minors as witnesses, failed to train its officers in how to conduct those identifications, and ratified the actions of the Defendant Officers by failing to discipline or train its officers as a result of the conduct alleged herein, and by continuing to pursue charges against Plaintiff despite the clear lack of probable cause or credible evidence.

101.   The City of Los Angeles, including by and through the LAPD and its policymaking officials, breached its duties and obligations to Plaintiff by, among other issues: failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and deliberately permitting the individual Defendants to engage in the unlawful and unconstitutional conduct as alleged herein.

102.   The City of Los Angeles knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiff to be injured and damaged by the LAPD's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff and that such policies were the moving force behind the violation of Plaintiff's constitutional rights as alleged herein above.

103.   Namely, Plaintiff's civil rights were violated, as mentioned above, when LAPD officers, while acting under color of state law and in conformance with or ratified by official City of Los Angeles policies and conduct, handcuffed and arrested Plaintiff without probable cause or a warrant.

104.   The actions and/or inactions of the City of Los Angeles are the moving force behind, and direct and proximate cause of Plaintiff's injuries as alleged herein.
///

105.   As a result of the City of Los Angeles' actions or inactions, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial.  In addition, Plaintiff has incurred, and will continue to incur, attorneys fees, costs, and expenses, including those authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

# X.

## SIXTH CAUSE OF ACTION

## FALSE ARREST— CAL. CIV. CODE § 43

### (*Plaintiff as Against All Defendants*)

106.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

107.   Plaintiff has a right to be free from arrest absent a warrant or probable cause guaranteed by Article I Section 1 of the California Constitution and Cal. Civil Code § 43.

108.   Defendants, and each of them, arrested Plaintiff, or alternatively intentionally caused her to be arrested and or detained.

109.   Defendants, and each of them, did not have the necessary probable cause to arrest plaintiff as all they knew was that Plaintiff matched the suspects' description of "Black female."

110.   Further, the identification of Plaintiff as a suspect in light of the aforementioned circumstances clearly did not rise to the level of probable cause.

111.   The conduct of the Defendants, and each of them, was a substantial factor in causing the harm that Plaintiff experienced as a direct result of the false arrest.

112.   Defendant City of Los Angeles is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees in conducting a false arrest of Plaintiff.

113.   The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive /

exemplary damages against said Defendants and each of them, excepting the public entities, in an amount to be proven at trial.

## XI.

### SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (*Plaintiff as Against All Defendants*)

114.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

115.   Upon information and belief, and based thereon, it is alleged that Defendants, and each of them, purposely, deliberately and intentionally each carried out the aforesaid acts pleaded above, and purposely caused Plaintiff to suffer extreme and severe humiliation, emotional distress, and mental distress.

116.   The aforementioned acts of arresting Plaintiff for being Black and female and detaining her in handcuffs outside of her apartment were outrageous and so extreme that it exceeded all bounds of that usually tolerated in a civilized society.

117.   Furthermore, Defendants' acts of arresting and booking Plaintiff only based on the uncertain and manipulated identification of a young child and his biased father, and failing to conduct any further investigation until she was able to conduct her own investigation to prove she could not have committed the crime are in themselves extreme and outrageous.

118.   Defendant CITY OF LOS ANGELES is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees leading to Intentional Infliction of Emotional Distress.

119.   The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, excepting the public entities, in an amount to be proven at trial.

## XII.

## EIGHTH CAUSE OF ACTION

## NEGLIGENCE

### (*Plaintiff Against All Defendants*)

120.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

121.   Defendants, and each of them, failed to properly investigate the facts before arresting and imprisoning Plaintiff on the false charges of carjacking and grand theft auto.

122.   Defendants, and each of them, had a duty of care to properly investigate the facts before causing anyone to be falsely arrested and imprisoned, but said defendants breached their duty of care owed to Plaintiff, and thereby proximately caused Plaintiff to suffer general and special damages and emotional distress in an amount to be proven at trial.

123.   Plaintiff is informed, and believes, and on that basis, alleges that Defendant City of Los Angeles negligently hired, retained, and supervised one or more of the individual officers involved in causing Plaintiff's false arrest and imprisonment.

124.   By the conduct described above, Defendant City of Los Angeles breached its duty of care owed to Plaintiff and thereby proximately caused Plaintiff to suffer general and special damages and emotional distress in an amount to be proven at trial.

125.   Defendant City of Los Angeles is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees leading to negligence.

///

///

///

///

## XIII.

# NINTH CAUSE OF ACTION

## MALICIOUS PROSECUTION – STATE LAW

### (*Plaintiff Against All Defendants*)

126.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

127.   Defendants, and each of them, intentionally and maliciously instituted a legal action against Plaintiff without probable cause.

128.   Defendants, and each of them, acted with reckless disregard of the law and of the legal rights of Plaintiff by causing a criminal proceeding to begin.

129.   Defendants, and each of them, had possession of Ms. Irvin's phone and the ability to use it to track her location at the date and time that the Camry was stolen, and should have known based on that information that Plaintiff could not have been involved.

130.   The case against Plaintiff was dismissed almost immediately upon the results of this investigation that Defendants should have performed themselves and prior to instituting charges against Plaintiff.

131.   Plaintiff was subjected to humiliation, fear, and pain and suffering by the illegal acts of the Defendants and suffered injuries as a result of their actions.

132.   As a result of the Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

133.   The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, excepting the public entities, in an amount to be proven at trial.

134.   Defendant City of Los Angeles is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XIV.

## TENTH CAUSE OF ACTION

## ASSAULT

### (*Plaintiff Against All Defendants*)

135.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

136.   The Defendants, and each of them, willfully committed acts that would probably and directly result in battery.

137.   Defendant City of Los Angeles is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees for assault.

138.   The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against said Defendants and each of them, excepting the public entities, in an amount to be proven at trial.

## XV.

## ELEVENTH CAUSE OF ACTION

## BATTERY

### (*Plaintiff Against All Defendants*)

139.   Plaintiff incorporates by reference and realleges each and every allegation of the preceding paragraphs as if fully stated here.

140.   The Defendants, and each of them, intentionally subjected claimant to an offensive touching of her person without her consent.

141.   Defendant City of Los Angeles is statutorily liable under the doctrine of *respondeat superior* (Government Code § 815.2) for the aforementioned acts and omissions of its agents or employees for battery.

142.   The actions of said individual defendants were committed maliciously, oppressively, and constituted despicable conduct, sufficient for an award of punitive /

exemplary damages against said Defendants and each of them, excepting the public entities, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

1.  General damages in an amount proved;

2.  Past and future medical and incidental expenses as proved;

3.  Other losses in an amount according to proof;

4.  Civil penalties as provided in applicable statutes such as Civ. Code § 51.7;

5.  Punitive and exemplary damages from and against each Defendant, excepting the City of Los Angeles and any other potential public entity, in an amount as proved;

6.  Costs of litigation pursuant to applicable statutes such as Civ. Code §§ 52.4 and 1708.5;

7.  Attorney's fees pursuant to applicable statutes such as Civ. Code §§ 51.7, 52.1, and 52.4, and Code of Civ. Proc. § 1021.5 as the court finds proper;

8.  Such other relief as the court deems proper and just;

9.  A trial by jury on all issues so triable.

Dated: July 20, 2020                          **HAYSBERT MOULTRIE, LLP**

By:___/s/ Nazareth M. Haysbert, Esq.____
NAZARETH M. HAYSBERT
JAMES L. MOULTRIE, III

*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff Tynesha Dixon respectfully requests that the present matter be set for a jury trial.

Dated: July 20, 2020                                  **HAYSBERT MOULTRIE, LLP**


By:   */s/ Nazareth M. Haysbert, Esq.*_____
                                                 NAZARETH M. HAYSBERT
                                                 JAMES L. MOULTRIE, III

                                                 *Attorneys for Plaintiff*

COMPLAINT